PHELPS, APPELLEE, *v.* POSITIVE ACTION TOOL COMPANY;
MAYFIELD, ADMR., ET AL., APPELLANTS.

[Cite as Phelps *v.* Positive Action Tool Co. (1986), 26 Ohio St. 3d 142.]

(No. 85-872—Decided August 25, 1986.)

M. *Blake Stone* and *Robert N. Gluck,* for appellee.

*Anthony J. Celebrezze, Jr.,* attorney general, *Janet E. Jackson* and *Richard C. Slavin,* for appellants.

WRIGHT, J. Although appellants raise several issues on appeal,[1] we decide this appeal on the narrow issue of whether Phelps was so intoxicated, as shown by the evidence, that the court can say, as a matter of law, that the injury arose out of his drunken condition and not out of his employment.[2]

Unlike workers' compensation legislation in other states, the Ohio Workers' Compensation Act does not make intoxication the basis of a

---

[1] Appellants raise the following propositions of law.

"Proposition of Law No. I

"An accident occurring while a fixed situs employee is traveling to or from work is not sustained within the course of and arising out of the employment and therefore is not compensable under the worker's [*sic*] compensation act.

"Proposition of Law No. II

"An employee deviates from his employment when he becomes intoxicated so that he is unable to properly and adequately pursue the business of his employer.

"Proposition of Law No. III

"A trial court commits reversible error when it refuses to charge a jury with a requested instruction which has application to the issues and states a correct principle of law.

"Proposition of Law No. IV

"A Court of Appeals errs when it fails to reverse the decision of a trial court where that decision was unsupported by and against the manifest weight of the evidence.

"Proposition of Law No. V

"A trial court commits reversible error when, 1). It allows counsel for one of the parties to testify at trial on behalf of that party when that testimony prejudices the other party and, 2). It does not require that counsel for a party withdraw from the case following his testimony on behalf of a party where his withdrawal would not create a substantial hardship for his client."

[2] Appellants contend that the appellee, in going to visit the oil drilling site, was on a mission of his own and that the accident did not arise out of and in the course of his employment. Appellants alternatively argue that the appellee was outside the course of his employment because of his intoxication. Appellee argues that the visit to the oil rig was work-related and that he was subsequently in the course of his employment when the auto accident occurred. He also contends that intoxication is not a defense to a claim for workers' compensation. We do not decide whether appellee was in the course of his employment, for we think that in any event appellee was so incapacitated at the time of his accident that he was outside the scope of his employment. The trial court refused to instruct the jury regarding the effect of appellee's intoxication on his claim for workers' compensation benefits. Further, the jury was instructed to accept as fact appellee's intoxicated condition.

separate defense to recovery of an award. R.C. 4123.46 provides in part that "[t]he industrial commission shall disburse the state insurance fund to employees of employers who have paid into said fund the premiums applicable to the classes to which they belong when such employees have been injured in the course of their employment, wherever such injuries have occurred, and provided such injuries have not been purposely self-inflicted * * *."

The purpose of the Workers' Compensation Act is not to make an employer an absolute insurer of the employee's safety, but only to protect the employee against risks and hazards incident to the performance of his work. In order for compensation to be denied on the basis that an employee was intoxicated, "the employee must be so intoxicated, as shown by the evidence, that the court can say, as a matter of law, that the injury arose out of his drunken condition and not out of his employment." *Hahnemann Hospital* v. *Indus. Bd. of Illinois* (1918), 282 Ill. 316, 327, 118 N.E. 767, 771; *Frith* v. *Owners of S.S. Louisianian* (1912), 2 K.B. 155, 5 B.W.C.C. 410. An employee who drinks intoxicating liquor to such an extent that he can no longer engage in his employment abandons his job and, when injured in that condition, his injury does not arise out of his employment. But intoxication which does not incapacitate the employee from following his occupation is not sufficient to defeat the recovery of compensation although the intoxication may be a contributing cause of his injury. Our statute was not designed to make contributory negligence of the employee, or a defense of that nature, a bar to his recovery under the Workers' Compensation Act, where his injury arose out of and in the course of his employment. See *Hahnemann Hospital, supra,* at 771.

The parameters of the necessary causal connection between the employee's injury and his employment were discussed in *Highway Oil Co.* v. *Bricker* (1935), 130 Ohio St. 175 [4 O.O. 101]. In that case the employee was injured when a gun he had brought to work, without authorization from his employer, discharged and injured him. In disallowing the benefits, this court at 178-179 stated:

" 'An injury is received "in the course of" the employment when it comes while the workman is doing the duty which he is employed to perform. It "arises out of" the employment, when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the results and injury. Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises "out of" the employment. *But it excludes an injury which cannot fairly be traced to the employment of the contributing proximate cause and which comes from a hazard to which the workmen would have been equally exposed apart from the employment. The causative danger * * * must be in-*

*cidental to the character of the business* and not independent of the relation of master and servant. * * *' " (Emphasis added.)

The court concluded in *Highway Oil Co., supra,* that there was no connection between the gunshot injury and the work of the employee. The employee brought the gun to the employer's premises and "thereby became subject to a danger of his own creation, to which the performance of his duties did not expose him * * *." *Id.* at 181-182.

Although intoxication alone does not necessarily constitute a departure from employment sufficient to preclude recovery under the Workers' Compensation Act, voluntary intoxication which renders an employee incapable of performing his work is a departure from the course of employment. See 1A Larson, Law of Workmen's Compensation (1985), Section 34.00. And when the employee is injured in that condition, his injury does not arise out of his employment. Under the facts of this case, it is apparent that petitioner was incapable of performing the activity incidental to the duties of his employment, that is, driving to the work site. The evidence shows that Phelps was drinking continuously in the same bar from approximately 7:00 p.m. until 12:00 a.m. When he left that bar he stopped at another bar to have another drink. The legislature, on the basis of extensive research into the problem of drunken drivers, has determined and statutorily established that a blood alcohol level of .10 percent has an adverse effect on an individual's coordination and control and that an individual with that blood alcohol level is incapable of safely operating a motor vehicle. R.C. 4511.19. In this case, the analysis showed that Phelps' blood contained substantially more than is required to raise the presumption of intoxication. With a blood alcohol level of .21 percent, Phelps was well above the minimum needed to impair his driving ability. Impairment of judgment and sensory perception as well as slowed reaction time are commonly known effects of excessive drinking. The fact that there were no skid marks, indicating that the brakes had not been applied prior to impact, the fact that Phelps was unable to remember how the accident occurred, and the fact that he admitted to his physician that he fell asleep at the wheel militate the conclusion that Phelps in fact was grossly intoxicated at the time of the accident. Thus, we hold that under the facts of this case, Phelps' voluntary intoxication was tantamount to his abandonment of employment and that his injury was proximately caused by his gross state of intoxication.

Our decision is consistent with those of other jurisdictions that have no statutory defense of intoxication but recognize intoxication as a bar to recovery where an employee was so intoxicated that he was incapable of performing the duties of his contract. See, *e.g., King* v. *Alabam's Freight Co.* (1931), 38 Ariz. 205, 220, 298 P. 634, 639; *Simpkins* v. *State Banking Dept.* (1935), 45 Ariz. 186, 192, 42 P. 2d 47, 49; *Ortega* v. *Ed Horrell & Son* (1961), 89 Ariz. 370, 372, 362 P. 2d 744, 745; *Sherrill & La Follette* v. *Herring* (1955), 78 Ariz. 332, 279 P. 2d 907; *Embree* v. *Indus. Comm.* (1974),

21 Ariz. App. 411, 520 P. 2d 324; *Hahnemann Hospital* v. *Indus. Bd. of Illinois, supra,* at 771; *M & M Parking Co.* v. *Indus. Comm.* (1973), 55 Ill. 2d 252, 256, 302 N.E. 2d 265.

Based on the foregoing, this court finds as a matter of law that Phelps' injury arose out of his intoxicated condition and not out of his employment. Accordingly, the decision of the court of appeals is reversed and final judgment is entered for appellants.

*Judgment reversed.*

LOCHER and HOLMES, JJ., concur.

SWEENEY, J., concurs in the syllabus, but dissents from the judgment.

DOUGLAS, J., concurs in judgment only.

CELEBREZZE, C.J., and C. BROWN, J., dissent.

HOLMES, J., concurring. I am in complete agreement with the majority opinion herein, and only write to note that the public policy consideration of prohibiting the payment of workers' compensation when one has so departed from his employment by way of intoxication has been pronounced yet further by the General Assembly. Section 4123.54 of the newly enacted Am. Sub. S.B. No. 307, effective August 22, 1986, provides that an employee is entitled to receive compensation from the fund when injured "provided the * * * [injuries] were not * * * (B) caused by the employee being intoxicated or under the influence of a controlled substance not prescribed by a physician where the intoxication or being under the influence of the controlled substance not prescribed by a physician was the proximate cause of the injury."

Accordingly, I concur.

SWEENEY, J., concurring in the syllabus, but dissenting from the judgment. While I agree in the abstract with the syllabus set forth in the majority opinion and would support its application in an appropriate case, I cannot agree with its application in *this* case. The issue of whether the plaintiff was intoxicated "to such an extent that he [could] * * * no longer engage in his employment" was fully litigated before the jury. Counsel for the bureau specifically stated to the jury in his closing argument that "it's been stipulated * * * that Mr. Phelps' blood alcohol was .21. * * * [Because of] the amount of drinking that night, you may find that took him out of his employment. * * * Mr. Phelps didn't go off the road because of a tire blow-out. He didn't lose control of his car because of a tire. He lost control of that car that evening * * * because he had too much to drink and he fell asleep at the wheel."

Additionally, the trial court's instructions clearly stated, in part: "An employee's injury does not arise out of his employment when the cause of the injury is outside of and disconnected from the employment, even though the employee may have been engaged in the work of his employer in the usual way at the time of the injury."

Thus, based upon the extensive arguments of the parties and the trial court's instruction, the question of the plaintiff's intoxication properly was before the jury; and, because evidence properly was offered on *both* sides of this issue, the jury's determination — that the plaintiff was within the scope of his employment and therefore entitled to workers' compensation — should not be disturbed.

There is no doubt that the abuse of alcohol and driving under the influence of alcohol are serious problems in our society. The severity of these problems, however, does not warrant a reweighing of evidence and the substitution of a majority of this court's views for those of any jury which determines in a workers' compensation case that a plaintiff's consumption of alcohol did *not* result in an "abandonment" of employment or serve as the *sole* cause of the plaintiff's injuries. See *C.E. Morris Co.* v. *Foley Constr. Co.* (1978), 54 Ohio St. 2d 279 [8 O.O.3d 261]; *Seasons Coal Co.* v. *Cleveland* (1984), 10 Ohio St. 3d 77.

CELEBREZZE, C.J., dissenting. The prevailing view, absent express statutory provision to the contrary, is that voluntary intoxication at the time of a worker's injury is ordinarily not a bar to workers' compensation benefits. See 1A Larson, Law of Workmen's Compensation (1985), Section 34.00. Since Ohio, like a number of its sister states, had not yet enacted a special statute concerning intoxication, the issue herein is whether by reaching an advanced stage of intoxication, the worker has abandoned his employment to an extent whereby it can be concluded that the injury did not arise in the course of employment, but rather was a product of the intoxication. Larson, *supra*, at Section 34.21; 81 American Jurisprudence 2d (1976) 886, Workmen's Compensation, Section 234; Annotation, Workmen's Compensation: Effect of Employee's Intoxication (1926), 43 A.L.R. 421, 423. In this regard, it has been stated that "[v]oluntary intoxication which renders an employee *incapable of performing his work* is a departure from the course of employment. Otherwise, apart from special statute, evidence of intoxication at the time of injury is ordinarily no defense, at least unless intoxication was the sole cause of injury." (Emphasis added.) Larson, Intoxication as a Defense in Workmen's Compensation (1974), 59 Cornell L. Rev. 398, 416-417.

Nationally, the instances where intoxication has barred recovery are exceedingly rare because it can seldom be concluded that the employee was " 'so intoxicated, as shown by the evidence, * * * that the injury arose out of his drunken condition and not out of his employment. * * * [*I*]*ntoxication which does not incapacitate the employee from following his*

*occupation is not sufficient to defeat the recovery of compensation although the intoxication may be a contributing cause of his injury.'* " (Emphasis added.) *District 141, Internatl. Assn.* v. *Indus. Comm.* (1980), 79 Ill. 2d 544, 557-558, 404 N.E. 2d 787.

One unusual case where recovery was denied is relied on by appellants. It concerned a chauffeur who was so intoxicated that his fare stopped the car and sent the worker back to the garage where he was employed. The chauffeur's employer told him to go home because he was too drunk to drive. The chauffeur was soon thereafter found dead. *Emery Motor Livery Co.* v. *Indus. Comm.* (1920), 291 Ill. 532, 126 N.E. 143. In denying death benefits, the Illinois court reasoned that "[a]fter he was sent from the building he was no longer in the employ of the plaintiff in error, and whatever occurred to him after the employment ceased can not be said to have occurred in the course of his employment." Hence, the injury probably would have been held to be out of the course of employment irrespective of the chauffeur's drinking.

Scenarios where it can be said that employment has been abandoned occur infrequently because, "if the claimant continues actively to perform his duties, even while admittedly intoxicated, he has not abandoned his employment." Larson, *supra,* at 6-84, Section 34.21. Justice in this case has been led astray by the majority's blurring of "abandonment of employment" because of blind drunkenness with those situations where a worker has continued to perform his employer's business pursuits while in an impaired state. In the former instance, the injury does not arise out of the employment because the worker is not engaged in his or her employment. In the latter, more common situation, the employee is not barred from recovery even though the intoxication may constitute a contributing factor to a work-related injury. For example, as noted above, in *Emery Motor Livery Co., supra,* the drunken worker had been sent from the building and told to go home, thus ending his employment for the day. However, in another Illinois decision expressly relied on by today's majority, *Hahnemann Hospital* v. *Indus. Bd. of Illinois* (1918), 282 Ill. 316, 118 N.E. 767, the court actually held in favor of the intoxicated worker. In *Hahnemann,* the court recognized the more numerous situations where the impaired employees are still attending to their duties. The court correctly observed, *inter alia,* that "* * * intoxication which does not incapacitate the employee from following his occupation is not sufficient to defeat the recovery of compensation although the intoxication may be a contributing cause of his injury." *Id.* at 327.

Similarly, the Arizona decisions relied on by the majority compel a conclusion opposite that reached by Justice Wright's opinion. Of special interest is the decision in *Ortega* v. *Ed Horrell & Son* (1961), 89 Ariz. 370, 362 P. 2d 744, which, like the instant case, concerned a nighttime automobile accident with an intoxicated worker-driver. In *upholding* the award of workers' compensation benefits, the court observed that the

worker's intoxication "would not have deprived decedent of the ability to recall his employer's instructions and carry them out. * * * [A]lthough a reading of 0.16 renders a person an unsafe driver, it would not indicate inability to operate a car. In view of this testimony and because of the lack of certainty regarding sobriety or lack thereof at the time of the accident, we cannot say that the evidence warranted a conclusion that either man had drunk liquor to such an extent that he could no longer follow his employment." *Id.* at 372-373.[3]

In a transparent attempt to add an air of respectability to its opinion, the majority includes without analysis an isolated citation to an old English decision. However, on closer examination, British workers' compensation law lends little support to the majority's decision in this instance. For example, in *O'Brien* v. *Star Line* (1908), 45 S.L.R. 935, 1 B.W.C.C. 177, cited in the *Hahnemann* decision relied on by today's majority, the denial of benefits was *not* based on the seaman's intoxication during his shore leave on the night previous to the injury. Rather, the finding that the seaman was outside the course of his employment was principally because he was injured while off-duty, at a location aboard ship where he was not authorized to go, and where he had no work-related reason to be. Similarly, the decision cited in today's opinion, *Frith* v. *Owners of S.S. Louisianian* (1912), 2 K.B. 155, 5 B.W.C.C. 410, also contains an inapposite factual setting and the majority's reliance is, at best, unsettling. In *Frith*, it was noted by Buckley, L.J., at 160 that:

"If the accident arises out of the employment and death results it is immaterial that there was misconduct. * * * Misconduct is no defence to a claim in respect of an accident arising out of and in the course of the employment.

"The whole question here is whether the accident to this man arose out of his employment. I have not the smallest hesitation in answering that in the negative. It arose out of the *fact* that *he was so hopelessly drunk that he could not stand,* and I doubt whether he could see. He had gone on shore without leave, which by itself is misconduct, and had got drunk there; he *came back so drunk that he was thrown on the deck like a sack of sand;* he staggered to his feet after a minute or two and fell over the side of the ship. *He was not engaged on his employment*; he was not fit for the performance of his employment. *If he had been in his employment he would not*

---

[3] In *King* v. *Alabam's Freight Co.* (1931), 38 Ariz. 205, 298 P. 634, the worker was discovered frozen to death with an empty bottle which had contained whisky by his side. Although his intoxicated condition could have contributed to his death, the court found that the worker had not abandoned his employment and awarded benefits to his dependents.

In *Simpkins* v. *State Banking Dept.* (1935), 45 Ariz. 186, 42 P. 2d 47, the reviewing court noted that the commission found, from conflicting evidence, that the injury was caused by the worker's drunkenness. Hence, that court, unlike today's majority, properly deferred to the trier of fact.

*have been in that part of the ship, but elsewhere."* (Emphasis added.) See, also, the opinion of Lord Cozens-Hardy, M.R., *supra,* at 157-159.

The difference between a worker who is so intoxicated that he is "like a sack of sand" and a worker who, though intoxicated, suffers a compensable injury during the course of his employment, was enunciated in the post-*Frith* case of *Williams* v. *Llandudno Coaching & Carriage Co., Ltd.* (1915), 2 K.B. 101, 8 B.W.C.C. 143. In *Williams,* an intoxicated stable worker was going up a ladder to a loft for feed when he slipped, fell sideways, and struck his head causing injuries which resulted in his death. Citing the *Frith* decision, the employer disputed the widow's and children's claim for workers' compensation death benefits. The employer reasoned that the accident was not caused by any "risk incidental to the employment" but by the added risk of his being drunk. *Williams, supra,* at 103. The court unanimously rejected the employer's premise, Swinfen Eady, L.J., holding that if the worker "* * * is acting within the scope of his authority, and is doing an act which it was part of his duty to do, and the accident arises from his being engaged in doing that act, * * * the employer is liable to pay compensation, although the workman is doing the act negligently, or contrary to the rules laid down for his guidance." *Id.* at 108. Master of the Rolls Lord Cozens-Hardy, who was previously a majority member of the *Frith* panel, had no difficulty distinguishing between the two cases and found no inconsistency in their results. The sailor in *Frith* was not injured in the course of his employment because he was blind drunk, was partially carried to the ship, could not stand on his own and, in fact was *not working.* The injury occurred at the work site but not in the course of employment. In comparison, the *Williams* situation "is rather like a case which I put by way of illustration in *Frith's* Case, that if a sailor, told to go aloft, does so, when in the state of intoxication, and meets with a fatal accident, that might be an accident arising out of the employment, notwithstanding his drunkenness." *Williams, supra,* at 106. Accord, *e.g., Frazer* v. *John Riddell & Co.* (1913), 51 S.L.R. 110, 7 B.W.C.C. 841 (worker who was fatally injured while driving a traction engine at a time when he was drunk and unfit for work, held entitled to benefits because the accident arose "out of" his employment since the man was actually performing the duty for which he was employed).[4]

---

[4] Great Britain's workers' compensation law (now, Social Security Act) on this subject substantially supports the premise of this dissent and America's majority view, as evidenced by the following exemplary excerpts from 33 Halsbury's Laws of England (4 Ed. 1982), National Health, Paragraph 489:

"' * * [F]or he may be in the course of his employment when he acts casually, negligently or even disobediently, so long as it is something reasonably incidental to his contract of employment.

"* * *

"The question in all these cases is whether the employee is doing something reasonably incidental to his employment or whether he is doing something for purposes of his own quite unconnected with his employment."

Likewise, the majority's decision is contrary to Ohio's legal precedent. For example, in *City Ice & Fuel Co.* v. *Karlinsky* (1929), 33 Ohio App. 42 (a decision ignored by today's majority) an intoxicated worker was killed when he fell from a coal wagon he was driving. The widow's claim for workers' compensation benefits was initially denied on the ground that the worker's death resulted from his voluntary intoxication (drunk driving). On appeal, the court definitively held that if a claimant continues actively to perform his duties, even while intoxicated, he has not abandoned his employment.[5] The Ohio appellate court also recognized that the issue con-

---

"Where an accident happens while an employed earner is acting in contravention of any statutory or other regulations * * * it must be deemed to arise out of and in the course of his employment if, but for that contravention * * *, it would have been deemed to have so arisen and the act is done for the purposes of and in connection with the employer's trade or business." *Id.* at Paragraph 495. Accord *Bulmer & Byron* v. *S.S. Baluchistan* (1934), 27 B.W.C.C. 399.

[5] In *City Ice & Fuel Co., supra,* the Court of Appeals for Cuyahoga County explained its reasoning at 43-44:

"It is argued in this court, that, inasmuch as there was some evidence to show that this man was intoxicated, he ceased to be in the employ of the company within the meaning of the law, even though it is admitted that he was returning from delivering a load of coal when he was precipitated to the street from his seat on the wagon, and is further admitted that in this fall he received a compound fracture of the arm. But it is claimed that, inasmuch as he was intoxicated, he could not recover compensation.

"We think the question in this case is whether this man received his injury while in the course of his employment. Now, upon that point there can be but one answer, and that it is that he was employed to deliver coal for the plaintiff in error company, and was returning with their team and wagon from delivering coal when the accident occurred. Whether that injury resulted in his death might be questionable, but as to the question of receiving an injury while in the course of his employment there can be but one answer, and that to the effect that he did receive such an injury; and, even though he was intoxicated, that would not make him any less an employee of the company, nor would it make him any less entitled to compensation.

"We do not understand that, if a person is seeking compensation, he is debarred because of his own negligence. We do not understand that the law in Ohio anywhere says that, if a man is intoxicated when he is working for another and is injured, he cannot recover compensation. It would be a singular proposition if the defendant company could employ a man who was in the habit of becoming intoxicated, and then when he became intoxicated, while in their employ and driving their vehicle, a team of horses attached to a coal wagon, injured somebody, the company could escape responsibility because the man, being intoxicated, ceased to be the employee of the company."

Most recently, the *Karlinsky* decision was approved and unanimously followed by the Court of Appeals for Lorain County in the case of *Martin* v. *Bernard Co.* (June 26, 1985), Lorain App. No. 3819, unreported, at 5. In *Martin,* the appellate court was presented with a factual scenario and procedural posture not unlike the instant cause. Approximately two hours following completion of his work as a welder at a remote job site in Toledo, Martin was driving a company-owned welding rig back to the employer's truck yard when he had an accident. The rig ran off the road, struck a guardrail and overturned. Martin was crushed in the collision and died from the injuries. Subsequent medical tests revealed alcohol in both his blood and stomach. Martin's widow and children applied for death benefits under the Act and, after denial of the claim by the commission, they appealed to the common pleas court.

cerning his level of intoxication was a factual question. Since the record of the trial court (which held in favor of the worker's widow) supported its finding that the inebriated driver had not left the course of his employment, the appellate court could see no error in the lower court judgment and upheld the award of benefits. Accord *Higgins* v. *Daugherty* (Mar. 30, 1982), Franklin App. No. 81AP-405, unreported; *Martin* v. *Bernard Co.* (June 26, 1985), Lorain App. No. 3819, unreported (discussed in fn. 5 *supra*); *White* v. *Yaple* (C.P. 1921), 23 Ohio N.P. (N.S.) 217 (laborer's drunken condition, which might have contributed to or directly brought about his death which occurred while he was actually at work in the hot sun, does not militate against the widow's and children's claims because the worker, even if intoxicated, was still in the course of his employment). See, also, *Embree* v. *Indus. Comm.* (1974), 21 Ariz. App. 411, 520 P. 2d 324[6]; *M&M Parking Co.* v. *Indus. Comm.* (1973), 55 Ill. 2d 252, 302 N.E. 2d 265[7]; cf. *Smith* v. *Central Transport & Liberty Mut. Ins. Co.* (1981), 51 N.C. App. 316, 276 S.E. 2d 751.[8]

---

As in the instant case, the employer theorized that the worker's intoxication barred participation. Nevertheless, the jury found that Martin was not outside the scope of his employment and that the dependents were entitled to the benefits.

On appeal, the employer claimed that Martin's act of driving while intoxicated *per se* was a deviation from the scope of his employment. Relying on the *Karlinsky* decision, the appellate court affirmed the judgment of the trial court.

[6] In *Embree* the Arizona appellate court stated in relevant part at 413:

"It is clear under the law in Arizona that 'simple' intoxication does not bar recovery, however, if this intoxication reaches a point where 'he can no longer follow his employment' recovery is barred. The question then becomes, when is the point reached where 'he can no longer follow his employment.' The Commission would define this point as being reached when the state of intoxication is such that he can no longer 'properly perform' his duties.

"As previously indicated, we are of the opinion that this would place this point too early along the consumption road from rosy glow to drunken stupor. This is for the reason that any intoxication (consumption of alcohol) tends to impair the ability of an individual to function. If we say that a sober individual performs properly, any amount of consumption of alcoholic beverages is therefore going to impair that performance and a state of being 'no longer capable of performing properly' will exist. To follow the Commission's rule to its logical conclusion would result in intoxication of any degree being a bar to compensation which is contrary to the settled law in Arizona."

[7] The Illinois Supreme Court essentially held in *M & M Parking Co.* that notwithstanding evidence concerning the presence of alcohol in the blood of a deceased employee, sufficient evidence existed from which the Industrial Commission could have concluded that the employee died as a result of an accidental fall from a man-lift elevator and that his death arose out of and in the course of his employment as a "car-hiker" at a three-level parking ramp. The decision at 256-257 also distinguishes its earlier holding in *Emery* in a manner which precludes extending the early case's narrow holding to situations where the injury does not arise solely out of an employee's drunken condition.

[8] Although the majority professes that its decision is "consistent with those of other jurisdictions," the nation's case law demonstrates otherwise. See, for example, *Fisher Contracting Co.* v. *Indus. Comm.* (1976), 27 Ariz. App. 397, 555 P. 2d 366 (blood alcohol level of

There are three themes which consistently appear in the treatises and judicial decisions. First, as the majority correctly observes, intoxication will only constitute a defense where the facts demonstrate an abandonment of employment so that the injury arises from the intoxication and not from the course of employment. Second, where it can be fairly stated that the intoxication contributed to an injury, occasioned during the course of employment, recovery will not be barred. This is so because workers' compensation Acts are designed to remove contributory negligence of the employee as a defense. *District 141* v. *Indus. Comm., supra,* at 558. Third, the determination of whether the drinking employee has abandoned his employment or whether the intoxication merely was a contributing factor to a work-related injury involves questions of fact for determination by a trier of fact. If the fact-finder determines that the employee has forsaken the employment relationship, the court will apply the law and bar recovery. However, if the fact-finder determines that the worker was still in the course of employment, even though alcoholic impairment may have contributed to the injury, the court must apply the law and allow participation in the fund. This was accomplished in the case *sub judice* by the lower courts.

In my opinion, today's decision has unraveled all three of these common threads. Contrary to Ohio law, the majority has applied a sterile legal truism without considering the underlying foundation of reason radiating from the cases from which they selectively draw today's one-sided syllabus. Additionally, through the misguided application of its syllabus rule, the majority has judicially resurrected one of the "unholy trinity" of

---

.16 percent), *Ortega, King,* and *Embree, supra* (Arizona); *District 141* (blood alcohol level of .186 percent), *Internatl. Assn.,* and *M & M Parking Co.* (blood alcohol level of .201 percent), *supra* (Illinois); *City Ice & Fuel Co., Martin,* and *Higgins, supra* (Ohio); *Smith, supra* (North Carolina); *American Cas. Co. v. Jones* (1955), 224 Ark. 731, 276 S.W. 2d 41; *Steffes* v. *93 Leasing Co.* (Mont. 1978), 580 P. 2d 450 (blood alcohol level of .34 percent); *Phillips* v. *Air Reduction Sales Co.* (1935), 337 Mo. 587, 85 S.W. 2d 551; *Coonce* v. *Farmers Ins. Exch.* (Mo. App. 1950), 228 S.W. 2d 825 (whether employment has been abandoned because of intoxication is question of fact for trier of fact); *McCue* v. *Studebaker Auto. Sales* (Mo. App. 1965), 389 S.W. 2d 408; *Begey* v. *Parkhill Trucking Co.* (Mo. App. 1977), 546 S.W. 2d 529; *Swillum* v. *Empire Gas Transport. Inc.* (Mo. App. 1985), 698 S.W. 2d 921 (blood alcohol level of .17 percent; abandonment because of intoxication is question of fact); *Fink* v. *Workmen's Comp. App. Bd.* (1978), 37 Pa. Commw. 67, 388 A. 2d 1152 (blood alcohol level of .22 percent); *Flavorland Indus., Inc.* v. *Schumacker* (1982), 32 Wash. App. 428, 647 P. 2d 1062 (blood alcohol level of .28 percent. The *Flavorland* court also held that the question of whether a worker's intoxication constituted abandonment of employment for workers' compensation purposes is for the jury to decide. In so ruling, the court approved jury instructions comparable to the general charge given in the case *sub judice.* The court also concluded that the trial court correctly excluded the employer's proposed jury instruction specific to intoxication.); *Chancy* v. *Pope* (1975), 136 Ga. App. 826, 222 S.E. 2d 667. See, also, supplemental decisions to Annotation (1926), 43 A.L.R. 421-426, especially 6 Supplemental Decisions (1976-1983) 127-128 and current supplement; Larson, *supra,* at Section 34.21.

common-law defenses, namely, contributory negligence.[9] Lastly, and most crucially, the majority squarely rejects the trier of fact's conclusions and has substituted its judgment in place of the jury which, of course, is always in a better position to assess the credibility and weight to be given to the testimony of the witnesses than is a reviewing appellate court. *Painesville Utopia Theatre Co.* v. *Lautermilch* (1928), 118 Ohio St. 167, syllabus.

And what is the truth in this case? Was Phelps in an alcohol-induced comatose state like the unconscious sailor who was tossed on to the deck of his ship "in such condition of incapacity, due to intoxication, as to resemble a sack of sand"? *Frith, supra,* at 156. Or, was Phelps' accident analogous to the sailor who, though in a state of intoxication, went aloft and met with a compensable "accident arising out of the employment not-withstanding his drunkenness"? *Id.* at 159. It may be that Master of the Rolls Lord Cozens-Hardy would not be familiar with blood alcohol test reports nor with the aftereffects of a truck tire blowout. Nevertheless, I have no doubt that he would have concluded, as did the jury below, that Phelps' conduct does not preclude the recovery of benefits because the accident *in fact* arose out of and in the course of his employment. R.C. 4123.54.

In order to affirm the judgment below, however, we are not called upon to determine what exactly occurred on that dark unfortunate night. Rather, our mandate in reviewing this workers' compensation appeal is to ascertain if there is evidence present to support the jury's award. The Cuyahoga County Court of Appeals, in upholding a jury award to a worker, set forth this basic tenet in the case of *Indus. Comm.* v. *Ochenduska* (1928), 30 Ohio App. 442, 445, as follows:

"It is the established rule of reviewing courts in Ohio that a verdict cannot be set aside on the ground that it is clearly and manifestly against the weight of the evidence, unless it appears from the record as a matter of law that there has been a serious mistake made by the court or jury, and this mistake must be so violent that its source is found in a misapprehension of the facts to such an extent that the verdict is a shock to the senses.

"As has been repeatedly stated, if there are two views that may be derived from the record, it is error for a reviewing court to reverse the verdict, because it would be an invasion of the province of the jury, and, if such a status exists, there is only one thing under the authorities that a

---

[9] Prior to the advent of workers' compensation laws, employers used several defenses to defeat common-law suit by injured employees. The three most notable restrictions, *i.e.,* the "unholy trinity" of defenses, were assumption of risk, the fellow-servant doctrine, and contributory negligence. See Prosser & Keeton, Torts (1984) 569, at Section 80. Legislative enactments abolished these common-law defenses and in their place substituted a workers' compensation system which is not based on fault. It is as shocking as it is deplorable that this court, through judicial fiat, should resurrect any of these sinister shields to recovery which heretofore had been deservedly cast upon the heap of discarded legal theories. Any such tinkering with the Act should emanate from the General Assembly.

reviewing court can do, and that is to affirm the judgment on the ground that there is credible evidence, appearing upon the issues, to sustain the verdict. This law is well stated in *Painesville Utopia Theatre Co.* v. *Lautermilch,* 118 Ohio St. 167, 160 N.E. 683."

As an abstract proposition, I certainly agree with a contention that one may reach such an extreme level of voluntary intoxication that an injury does not arise in the course of employment. Again, however, the application of this legal bar is entirely dependent on factual determinations such as the level of intoxication, its effect on the employee's work capacity and whether the employee was injured in the course of employment. Thus, the jury's decision should not be disturbed in this case because there is competent evidence from which the trier of fact could render a verdict favorable to appellee. Accord *Higgins* v. *Daugherty, supra,* at 6.

The instant record is replete with evidence which sustains the verdict. For example, there was credible evidence before the jury that, among other things, appellee was driving a company truck; he had received a telephone call from a PATCO worker regarding a plant production problem; such calls were routine because of the nature of Phelps' supervisory position; he was en route to the plant; he had, immediately preceding the accident, been on a recruiting visit at a drilling site; his route indicated he was on the way to PATCO from the drilling site; and the accident in fact resulted from a front tire blowout and had nothing to do with alcohol. The court of appeals sensibly concluded that the level and effect of intoxication were questions of fact and that the record contained sufficient evidence to support the trier of facts' conclusion that the "intoxication was not extreme enough to take him out of his course of employment."

Further, the trial judge herein advised the jury concerning, *inter alia,* course of employment, departure from business for personal pleasure, the relationship between employment and injury, Phelps' stipulated blood alcohol level, and also instructed the jurors that an injury does not arise out of employment if the cause of the harm is disconnected from the employment. So instructed by the trial judge, the jury sifted through the evidence, weighed the testimony, considered the arguments of counsel, and found that appellee is entitled to participate in the Workers' Compensation Fund.[10]

---

[10] As the majority points out at footnote two, *supra,* the trial judge correctly declined to charge the jury in this civil action concerning Ohio's D.W.I. criminal statute. However, the trial court did charge the jury concerning, *inter alia,* Phelps' blood alcohol level by including employer's proposed jury instruction IX which reads as follows:

"The parties have stipulated, and you must therefore find, or accept as fact, that a blood alcohol test indicated that the Plaintiff's blood alcohol level after the accident was .21, or twenty-one one-hundredths of one percent by weight of alcohol in the Plaintiff's blood."

Although jury interrogatories may have been helpful in this instance, Civ. R. 49(B) provides that "[t]he court shall submit written interrogatories to the jury * * * upon request of * * * [a] party * * *." In *Dyche Real Estate Fund* v. *Graves* (1978), 55 Ohio App. 2d 153, 156

Accordingly, I would uphold the judgment below and would have added the following two paragraphs to the majority's incomplete syllabus:

2. An employee's intoxication, which contributes to an otherwise compensable injury incurred in the course of employment, will not preclude recovery of workers' compensation disability or death benefits because contributory negligence is not a defense to recovery under the Workers' Compensation Act.

3. Questions of fact concerning whether an intoxicated worker's injuries arose in the course of employment are for determination by a trier of fact and will not be disturbed by a reviewing court on appeal unless they are against the manifest weight of the evidence. (*C.E. Morris Co.* v. *Foley Constr. Co.* [1978], 54 Ohio St. 2d 279 [8 O.O.3d 261], followed.)

Had my brothers adhered to these fundamental principles, the judgment below would have been affirmed. However, the majority has chosen to usurp the jury's sacrosanct role, violated settled tenets of appellate review, enacted a new law which is at war with Ohio workers' compensation laws, and resurrected an archaic common-law defense to recovery which was long ago repudiated in this state, all of which again threaten the safety, security and well-being of Ohio's workforce.[11]

Based on the foregoing, the essence of Justices Sweeney's and Brown's poignant observations, and the underdeveloped rationale of the majority,[12] I dissent.

C. BROWN, J., concurs in the foregoing dissenting opinion.

---

[9 O.O.3d 321], Judge (now Justice) Holmes observed that "[i]t is improper for the trial court to *sua sponte* submit an interrogatory to the jury, such procedure being the prerogative of counsel for the parties to test the basis for a jury verdict."

Assuming *arguendo* that an appellate court would determine that a trial court had committed prejudicial error in instructing the jury in a given case, the appropriate action for the reviewing court, of course, would be to remand the cause to the trial court for further proceedings. *Bradley* v. *Mansfield Rapid Transit* (1950), 154 Ohio St. 154, 169 [42 O.O. 221].

[11] The nation's courts will ordinarily "give the intoxication defense as narrow a scope as the words will bear. This is in line with the pervading spirit of compensation law and administration, which minimizes the element of employee fault and maximizes the element of protecting the security and families of all workers, including the just and the unjust, the 'deserving' and the non-deserving, the prudent and the negligent — yes, and even the sober and the not-so-sober." 59 Cornell L. Rev., *supra*, at 417.

[12] Justice Holmes' casual reference to the newly enacted R.C. 4123.54(B) in his concurring opinion is also a *non sequitur* to today's holding since that section is not yet effective.

Additionally, if this law were pertinent it would in fact command a result contrary to today's decision. A number of jurisdictions have enacted laws which make intoxication the basis of a separate statutory defense. However, these jurisdictions generally hold that since intoxication is an affirmative defense, the burdens of proof concerning intoxication and causation are on the employer. *U.S. Fid. & Guar. Co.* v. *Collins* (1957), 231 Miss. 319, 331, 95 So. 2d 456, 459. In appeals where there is conflicting evidence in this regard, a factual determina-

CLIFFORD F. BROWN, J., dissenting. Because I consider today's decision to be contrary to law, logic, and justice, I dissent.

The majority premises its reversal of the jury verdict primarily on the fact that Phelps was intoxicated at the time of the accident. This reasoning is totally defective for the following reasons.

First, the question of whether Phelps was so intoxicated that he was completely incapable of performing any duty on behalf of his employer is for the jury. There was competent, credible evidence from which the jury could reasonably find this issue in Phelps' favor, such as the fact that Phelps, a short while before the accident, was clear-minded enough to seek out a specific welder at the drilling site to recruit for his employer. It is evident from the jury's verdict that it believed this evidence. By overturning the verdict, this court is usurping the jury's role and substituting its own views for those of the trier of fact. This, of course, is completely contrary to the most basic principles of appellate review. See, *e.g., C.E. Morris Co.* v. *Foley Constr. Co.* (1978), 54 Ohio St. 2d 279 [8 O.O.3d 261].

The majority, I believe, has fashioned the result in this case to satisfy a need to express its dislike for drunk drivers. I would certainly join eagerly in such a sentiment were this an appropriate setting. But this is not a drunk driving case. Nor is this a case, as the majority apparently wishes it to be, where intoxication was the actual cause of the injury for which the claimant seeks benefits. The jury in the instant cause determined that intoxication was *not* the proximate cause of the injury. Proximate cause is normally a question of fact for the jury. See, *e.g., Cascone* v. *Herb Kay Co.* (1983), 6 Ohio St. 3d 155; *Shinaver* v. *Szymanski* (1984), 14 Ohio St. 3d 51. In its haste to announce its condemnation of drunk drivers, this court has ignored this basic principle.

There is no basis whatsoever for overturning the jury verdict on the ground that Phelps' intoxication was the sole cause of the accident. The evidence presented below was conflicting on this point. There was testimony below, which if believed, proved that the accident was caused by a tire blowout. Again, this court is invading the province of the jury by essentially holding that such evidence is not worthy of belief.

---

tion that intoxication did not cause the accident must be affirmed by the reviewing court. *Vandiver* v. *Watford* (Fla. 1965), 178 So. 2d 195. Lastly, in a plethora of cases, even when the worker was clearly intoxicated, recovery was not denied where the employee still was performing his or her job or when the employer's evidence did not demonstrate the requisite causal relationship between the intoxication and the accident. *E.g., Pittman* v. *Twin City Laundry & Cleaners* (1983), 61 N.C. App. 468, 300 S.E. 2d 899; *Haller Beverage Corp.* v. *Dept. of Indus.* (1970), 49 Wis. 2d 233, 181 N.W. 2d 418 (absence of evidence as to tire blowout could not be relied upon by employer to prove that death of employee, whose car collided with abutment and whose blood contained .29 percent alcohol, was caused by intoxication); *Hatley* v. *Lewiston Grain Growers, Inc.* (1976), 97 Idaho 719, 552 P. 2d 482; *Gentry* v. *Lilly Co.* (Tenn. 1971), 476 S.W. 2d 252. Based on these principles, the new code section, if sustainable, would further compel a result contrary to the majority's decision. See, generally, *Larson, supra,* at Sections 34.31 and 34.33.

Lastly, this court is indulging in judicial legislation. By holding that Phelps' intoxication disqualifies him from receiving compensation as a matter of law, the majority is creating a new requirement never contemplated by the legislature. R.C. 4123.54 sets forth the sole requirements for entitlement to workers' compensation. It provides in pertinent part:

"Every employee, who is injured or who contracts an occupational disease, and the dependents of each employee who is killed, or dies as the result of an occupational disease contracted in the course of employment, wherever such injury has occurred or occupational disease has been contracted, *provided the same were not purposely self-inflicted,* is entitled to receive * * * such compensation for loss sustained on account of such injury, occupational disease or death, and such medical, nurse, and hospital services and medicines, and such amount of funeral expenses in case of death, as are provided by sections 4123.01 to 4123.94 of the Revised Code." (Emphasis added.)

It is clear from the foregoing that the only requirements for eligibility for benefits are that the injury must be incurred in the course of employment and that the injury must not be *purposely self-inflicted.* Yet this court today grafts a third requirement onto the statute: the employee must not have been intoxicated at the time of the injury. This exception is not only unjustified, it also sets a dangerous precedent. After today's decision, a worker who has an alcoholic beverage with his lunch, returns to the work site and is promptly injured by a careless co-worker may lose eligibility for workers' compensation due solely to the fact that he had indulged in alcohol, even though such fact has not the remotest connection to his injury. The legislature could never have intended such a bizarre result.

By ruling as it does today, the majority fails to exercise judicial restraint and indulges in judicial legislation, despite its alleged abhorrence for such practices. See, *e.g., Strohofer* v. *Cincinnati* (1983), 6 Ohio St. 3d 118, 125-127 (Locher, J., dissenting); *Albritton* v. *Neighborhood Centers Assn.* (1984), 12 Ohio St. 3d 210, 218 (Holmes, J., dissenting); *Balyint* v. *Arkansas Best Freight System, Inc.* (1985), 18 Ohio St. 3d 126, 137 (Wright, J., dissenting).

For these reasons, I dissent.