BUTLER, Exrx., Appellee,

v.

BAKER; Ohio State Home Services, Inc., d.b.a. Ever–
Dry Waterproofing of Columbus, Appellants.

[Cite as *Butler v. Baker* (1993), 90 Ohio App.3d 143.]

Court of Appeals of Ohio,
Franklin County.

No. 93AP–225.

Decided Sept. 2, 1993.

*Kelly M. Morgan,* for appellee.

*Roetzel & Andress* and *John P. Mazza,* for appellants.

---

STRAUSBAUGH, Judge.

This is an appeal by defendants-appellants, Ohio State Home Services and Ever–Dry Waterproofing, from a jury verdict and judgment in the sum of $150,000 in favor of plaintiff in the common pleas court. The record indicates that on January 30, 1987, at approximately 6:05 p.m., while defendant Baker was operating a 1984 Ford F350 dump truck owned by defendant Ever–Dry Waterproofing of Columbus, Inc., a subsidiary of Ohio State Home Services, Inc., south on State Route 4, the truck slid on the snow- and ice-covered road, crossed the center line, sideswiped one vehicle and slid head-on into the automobile driven by plaintiff's decedent Carl E. Potts, who, along with Hazel Pierce, died from the injuries sustained in the crash.

On the date in question, Baker was employed as a foreman for Ever–Dry and had been supervising a work crew near Pharisburg, Ohio. At approximately 1:00 p.m., Baker drove off the job site in the company-owned dump truck with the intention of picking up lunch and returning to work, consistent with the company

policy of eating meals on the job site. Baker indicated that he would be back soon. However, instead of returning to work, Baker went to a restaurant-bar known as the Draft Haus in Broadway, Ohio, and drank beer and whiskey until late in the afternoon. When his immediate supervisor, Ron Moore, learned that Baker had left and not returned, he solicited the aid of Charles Begley, a foreman on another site, to look for Baker. After being unsuccessful in locating Baker, Moore reported the vehicle stolen at approximately 5:30 p.m.

The record indicates that Baker left the Draft Haus about 6:00 p.m., and drove the dump truck back to the job site. By the time Baker returned to the job site, the work crew had departed. Baker then proceeded to drive the dump truck back to the Worthington office. It was a company requirement that company vehicles had to be returned to the offices of Ever–Dry in Worthington at the end of the day. While returning the truck to Ever–Dry's office, Baker drove left of center on State Route 4, and struck the vehicle driven by Potts.

Baker had a blood-alcohol content of .28 percent at the time of the accident. Baker stated that he had no idea what he was doing and could not recall the accident. Baker did not have a valid driver's license since it had been suspended in 1980 due to an OMVI conviction. Ever–Dry knew that Baker did not have a valid driver's license. The record indicates that defendant Ever–Dry's outside risk management firm investigated Baker and concluded that he was "no good as a driver." Ever–Dry had Baker sign a statement that he understood he was not permitted to drive company vehicles under any circumstances, and that if he did, he assumed financial responsibility.

Upon trial, the jury unanimously found that Baker was in the scope of his employment with defendants Ohio State Home Services, Inc. and Ever–Dry at the time of the accident. The jury unanimously found the issues in favor of plaintiff and against the defendants Ohio State Home Services, Inc. and Larry Baker, in the sum of $150,000. The jury found that defendants Ohio State Home Services, Inc. and Ever–Dry negligently entrusted their vehicle to Larry Baker on January 30, 1987. It is from this judgment that defendants-appellants appeal, setting forth the following two assignments of error:

"1. The trial court erred in denying defendants-appellants' motion for directed verdict.

"2. The jury's verdict was contrary to the manifest weight of the evidence."

In support of the first assignment of error, defendants argue that mere ownership of the dump truck is insufficient to impose liability on Ever–Dry where Baker was not operating the truck to do a job-related task in the furtherance of Ever–Dry's business. Defendants argue that if an employee deviates from the path of his employment, his employer is not liable for negligence occurring during

the deviation. Defendants further argue that a master is not responsible for the conduct of his servant where the latter, going on a mission of his own, makes a clear and complete deviation and departure from the scope of his employment, the conduct occurring during the period of such deviation.

Although the law cited by defendants is a correct statement, such law cannot be applied to the facts of the present case. In the instant case, the evidence is that Baker went on a frolic of his own in entering the restaurant bar and drinking intoxicating beverages for four and one-half hours while he should have been working at the job site. However, the evidence is not disputed and the jury found that Baker had ceased and no longer engaged in his frolic and departure from his employment, but had resumed his duties of returning to the job site and from there was in the act of returning the dump truck to the custody of his employer, as he was mandated to do, at the time of the accident.

Defendants seek to apply the law as set forth by the Supreme Court in *Phelps v. Positive Action Tool Co.* (1986), 26 Ohio St.3d 142, 26 OBR 122, 497 N.E.2d 969, as the applicable law in this case. However, the facts of *Phelps* cannot be transposed to the facts of the instant case. *Phelps* involves a workers' compensation claim which involves the standards used in determining the applicability of workers' compensation coverage. The underlying policy in the workers' compensation system is to protect the interests of the employer and employee as opposed to the interests of innocent third-party victims in the context of liability under the doctrine of *respondeat superior*, wherein an employee's negligence injures a third-party at a time when the employee is acting within the course and scope of his employment with the employer. We therefore find that the trial court did not err in denying defendants' motion for a directed verdict.

■ With respect to defendants' further argument that the trial court failed to apply the proper standards regarding the negligent entrustment of defendants' vehicle to its employee, we find that there is sufficient evidence to find that defendants knew that Baker had no driver's license and that its outside risk management firm had stated that its employee was "no good as a driver." Therefore, defendants' first assignment of error is overruled.

■ With respect to defendants' second assignment of error, where a judgment is supported by some competent, credible evidence going to all of the essential elements of the case, a judgment will not be reversed by a reviewing court as being against the manifest weight of the evidence. We find that the evidence in this case supports the verdict of the jury and that the jury verdict has been tested by interrogatories which were unanimously answered in favor of the plaintiff's position. Defendants' second assignment of error is overruled.

Both assignments of error having been overruled, the judgment of the trial court is affirmed.

*Judgment affirmed.*

TYACK, J., concurs.

DESHLER, J., concurs separately.

DEAN STRAUSBAUGH, J., retired, of the Tenth Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.

DESHLER, Judge, concurring separately.

While I concur in the judgment of the court, additional comment regarding our reasoning relating to the decision is warranted in view of appellants' misplaced reliance upon the case of *Phelps v. Positive Action Tool Co.* (1986), 26 Ohio St.3d 142, 26 OBR 122, 497 N.E.2d 969. Appellants urge reversal on the basis that the Supreme Court has decided that a worker who voluntarily intoxicates himself removes himself from the course of employment for workers' compensation purposes and thereby precludes his employer from liability to a third party where liability is premised upon *respondeat superior.* I do not believe the fact-intensive decision in *Phelps* was, as a matter of legal doctrine, intended to transfer a concept peculiarly applicable to employer/employee relationships in the context of workers' compensation to the general field of tort liability. The appellants argue that "the standards used in determining the course of employment (workers' compensation) are identical to the criteria for scope of employment used for assessing *respondeat superior.*" The cases cited by appellants do not support this proposition nor can we find any authority for such a contention. The statutory scheme of workers' compensation imposes a form of no-fault liability upon employers for injuries of employees arising out of and in the course of employment. While intoxication may, under some circumstances, result in an employee's inability to perform work-related duties, there exists no reason to deny relief to an innocent third party if the employee is, at the time of the event giving rise to injury or death, acting on behalf of the employer. And this is so notwithstanding the fact the employee may have been under the influence of alcohol. The *Phelps* case does not address the situation, as in the case *sub judice,* where the employee may have taken himself out of the scope of employment and returned to it in furtherance of company business. This factual distinction alone results in the *Phelps* case being inapplicable to the disposition of this case.

The danger of extending a narrowly crafted workers' compensation case to tort law is apparent. It is fundamental that a valid workers' compensation claim must involve an injury arising out of and in the course of employment. The definition

of this concept has been addressed in numerous cases. The term "scope of employment," as related to the doctrine of *respondeat superior,* is more elusive, from a definitional standpoint, since the application of this doctrine is fact-driven in each individual case. While the concepts "arising out of and in the course of employment" and "within the scope of employment" are similar, there is no compelling reason to eradicate long-established principles of agency and tort liability even when the employee is drinking if it is concluded the employee is acting in furtherance of the employer's business. In my view, appellants urge a tortuous application of the ruling in *Phelps,* and in so doing fail to recognize inherent differences in the field of workers' compensation and tort law. Based upon the foregoing and for reasons stated in the majority opinion, the decision of trial court should be affirmed.