JOURNAL ENTRY AND OPINION
{¶ 1} Appellant, Norwood Richmond, appeals the decision of the trial court, which granted summary judgment in favor of the appellee, the City of Shaker Heights ("the city"). After a thorough review of the arguments and for reasons set forth below, we reverse and remand.
 {¶ 2} The appellant was injured as the result of a physical altercation that took place on October 24, 2003 in the Cleveland Flats entertainment district. Because he sustained injuries as a result of the altercation, the appellant filed a claim with the Bureau of Worker's Compensation on November 25, 2003. The appellant's claim asserted that his injuries occurred while he was acting within the scope of his employment as a Shaker Heights police officer, entitling him to worker's compensation. The city immediately challenged the appellant's assertions, and on May 21, 2004, the Industrial Commission denied the appellant's claim, concluding that he was legally intoxicated at the time of the altercation; thus, he was not acting within the scope of his employment when he sustained the injuries. The appellant appealed the decision; however, the Industrial Commission refused his appeal. On August 16, 2004, the appellant filed an appeal with the Cuyahoga County Court of Common Pleas. In response, the city filed a motion for summary judgment on February 28, 2005. On March 31, 2005, the trial court granted summary judgment in favor of the city, finding that the appellant was not acting within the scope of his employment when he was injured. On June 10, 2005, the appellant filed the present appeal.
 {¶ 3} The incident that gave rise to the present case began on the evening of July 23, 2004, when the appellant was working off duty as a security guard for a Shaker Heights' High School basketball game. When the game ended, the appellant drove to the home of a friend for dinner, where he admitted to drinking one glass of wine. Following dinner, the appellant drove to the downtown Cleveland nightclub, Club 75, where he admitted to drinking between four and seven beers. While at Club 75, the appellant spoke with two female acquaintances. The women told the appellant that they were leaving Club 75 to go to Club Kaos, a nightclub located in the Flats. As the women were leaving Club 75, the appellant told them that he would meet them at Club Kaos later in the evening. At 1:30 a.m. on October 24, 2003, the appellant left Club 75 and drove to Club Kaos. As he parked his car, he realized that he was still carrying his service revolver from his security assignment earlier that evening. Observing that his car was parked in a high crime area, the appellant reasoned that it would be safer to keep his service revolver on his person than to possibly have it stolen from his vehicle. Although the appellant was aware that it is illegal to carry a firearm into an establishment that serves alcohol, he decided to keep his service revolver in his holster and proceeded to meet his acquaintances inside the nightclub. The appellant entered the nightclub as it was closing, but he had an opportunity to speak with the women he planned to meet. He told them that he would walk them to their car and waited for them as they retrieved their coats.
 {¶ 4} As the three exited the nightclub, they encountered two men, Joshua Sulin and Joseph Dolego. The two men yelled racial slurs at the appellant and his female companions, taunting the three because the appellant, an African-American male, was with two Caucasian women. Sulin then approached one of the appellant's female companions and pushed her into a car. In response, the appellant and the men entered into a physical altercation. At one point during the altercation, the appellant told the men that he was a police officer; however, this did not stop them from physically assaulting him. The appellant then warned the men that he had a gun, yet they still did not retreat. In response, the appellant drew his firearm and attempted to shoot at one of the men; however, he missed and hit a building instead. After the appellant discharged his gun, he reholstered it and began to walk toward his companions' vehicle. As he headed towards the vehicle, he was again assaulted by the two men and sustained serious bodily injury. Following the altercation, the appellant was treated for his injuries at MetroHealth Medical Center, where it was determined that his blood alcohol level was .163 percent.
 {¶ 5} The appellant now brings this appeal, asserting six assignments of error for our review1.[1]
 {¶ 6} "I. The trial court erred in granting appellees' motion for summary judgment as issues of material fact exist."
 {¶ 7} In his first assignment of error, the appellant argues that the trial court erred when it awarded summary judgment in favor of the appellee. More specifically, the appellant asserts that genuine issues of material fact remain to be litigated in this case because sufficient evidence has not been presented to confirm that his intoxication prevented him from acting within the scope of his employment.
 {¶ 8} "Civ.R. 56(C) specifically provides that before summary judgment may be granted, it must be determined that: (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317,327, 364 N.E.2d 267.
 {¶ 9} It is well established that the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. Celotex Corp. v. Catrett (1987),477 U.S. 317, 330, 106 S.Ct. 2548, 91 L.Ed. 2d 265; Mitseff v.Wheeler (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798. Doubts must be resolved in favor of the nonmoving party. Murphy v.Reynoldsburg (1992), 65 Ohio St.3d 356, 604 N.E.2d 138.
 {¶ 10} In Dresher v. Burt, 75 Ohio St.3d 280,1996-Ohio-107, 662 N.E.2d 264, the Ohio Supreme Court modified and/or clarified the summary judgment standard as applied inWing v. Anchor Media, Ltd. of Texas (1991), 59 Ohio St.3d 108,570 N.E.2d 1095. Under Dresher, "* * * the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of therecord which demonstrate the absence of a genuine issue of factor material element of the nonmoving party's claim." Id. at 296. (Emphasis in original.) The nonmoving party has a reciprocal burden of specificity and cannot rest on mere allegations or denials in the pleadings. Id. at 293. The nonmoving party must set forth "specific facts" by the means listed in Civ.R. 56(C) showing a genuine issue for trial exists. Id.
 {¶ 11} The appellant argues that genuine issues remain to be litigated concerning whether his intoxication rendered him incapable of acting within the scope of his employment. We agree. The Supreme Court of Ohio addressed the issue of an employee's intoxication and its effect on scope of employment in the case ofPhelps v. Positive Action Tool Co. (1986), 26 Ohio St.3d 142, wherein it concluded:
 {¶ 12} "An employee who drinks intoxicating liquor to such an extent that he can no longer engage in his employment abandons his job and, when injured in that condition, his injury does not arise out of his employment." Id. at 42.
 {¶ 13} R.C. 4123.54 provides additional support for Phelps:
 {¶ 14} "Every employee, who is injured or who contracts an occupational disease, and the dependents of each employee who is killed, or dies as the result of an occupational disease contracted in the course of employment, wherever such injury has occurred or occupational disease has been contracted, provided were not:
 {¶ 15} "(1) Purposely self-inflicted; or
 {¶ 16} "(2) Caused by the employee being intoxicated orunder the influence of a controlled substance not prescribed by aphysician where the intoxication or being under the influence ofthe controlled substance not prescribed by a physician was theproximate cause of the injury, is entitled to receive either directly from the employee's self-insuring employer as provided in section 4123.35 of the Revised Code, or from the state insurance fund, the compensation for loss sustained on account of the injury, occupational disease, or death, and the medical, nurse, and hospital services and medicines, and the amount of funeral expenses in case of death, as are provided by this chapter." (Emphasis added.)
 {¶ 17} It is clear from the Ohio Supreme Court's holding inPhelps, as well as R.C. 4123.54, that the question of whether the appellant was acting within the scope of his employment when he was injured is unclear and, as a result, the requirements for summary judgment are not satisfied. Although the appellant's blood alcohol level the evening of the incident was .163, the appellant, as well as one of his companions who witnessed the incident, refute the argument that his level of intoxication prevented him from performing his duties as a police officer. During the appellant's worker's compensation hearing, the following exchange occurred, when he was questioned about his level of intoxication:
 {¶ 18} "Q. Did you feel at any time after leaving Club Chaos that you were in any way impaired by alcohol?
 {¶ 19} "A. No, I never felt impaired whatsoever, not at all, not at the slightest.
 {¶ 20} "Q. Okay. And I know we're sort of getting ahead, but would you have done anything at all differently had you not had anything to drink that night?
 {¶ 21} No, I know with a hundred percent certainty that had I not done anything whatsoever, I don't think that incident or that night or circumstance would have turned out in any way differently, only if those guys had maybe not been drunk or on drugs."
 {¶ 22} It is undisputed that the appellant was legally intoxicated at the time of the assault; however, conflicting testimony exists as to whether the appellant did in fact have the ability to perform his duties as a police officer, despite his intoxication. In order to serve as an effective police officer, skills such as critical reasoning, physical coordination and sensory perception are crucial. Because of the appellant's level of intoxication, the question remains as to whether he was able to perform those duties; however, this is a question suited for the trier of fact, rather than this court.
 {¶ 23} The trial court erred when it granted summary judgment in favor of the appellee. Although the appellant was legally intoxicated when he was injured, there are conflicting arguments regarding whether his intoxication prevented him from acting within the scope of his employment. Thus, genuine issues of material fact remain to be litigated in this case. We therefore reverse the trial court's decision and remand for further proceedings.
 {¶ 24} Accordingly, this court's reversal renders the appellant's five remaining assignments of error moot for purposes of this appeal because they are questions properly suited for the trier of fact.
Judgment reversed; case remanded.
This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.
It is, therefore, considered that said appellant recover of said appellee costs herein.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Karpinski, J., and McMonagle, J., Concur.
 APPENDIX A
Appellant's Assignment of Error II through VI:
II. The trial court erred in finding that the appellant was not injured during the course and scope of his employment.
III. The trial court erred in holding that appellant's injuries were caused by having alcohol in his system.
IV. The trial court erred as a matter of law in holding that appellant's having alcohol in his system was a per se deviation from him acting within the course and scope of his employment.
V. The trial court erred in holding that appellant's possession of his service revolver was relevant to appellant being injured within the course and scope of his employment.
VI. The trial court erred in considering appellant's possession of his service revolver in a liquor establishment as being relevant to whether appellant was injured within the course and scope of his employment.
[1] Appellant has raised six assignments of error for our review; however, the resolution of certain errors renders others moot. Thus, we have tailored our discussion accordingly. The remaining assignments of error are included in appendix A of this Opinion.