McKEEHAN, Appellant,

v.

AMERICAN FAMILY LIFE ASSURANCE COMPANY
OF COLUMBUS, a.k.a. AFLAC, Appellee.█

[Cite as *McKeehan v. Am. Family Life Assur. Co. of Columbus*, 156 Ohio App.3d 254, 2004-Ohio-764.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–030280.

Decided Feb. 20, 2004.

Droder & Miller Co., L.P.A., and Richard J. Rinear, for appellant.

Carlile Patchen & Murphy L.L.P., David M. Karr and Stephanie Champ, for appellee.

---

HILDEBRANDT, Judge.

{¶ 1} Plaintiff-appellant Grace McKeehan appeals from the trial court's judgment declaring that she is not entitled to benefits under an accidental-death,

dismemberment, and injury policy ("the policy") issued by defendant-appellee, American Family Life Assurance Company of Columbus ("AFLAC"), to her son Marcus. For the following reasons, we reverse the judgment of the trial court.

{¶ 2} At trial, the parties agreed to a declaration of their rights under the policy based on the following stipulated facts: (1) that McKeehan was the designated beneficiary under the policy; (2) that on July 15, 2000, Marcus was riding in the bed of a pickup truck on an interstate highway when he "came out of the pickup truck and landed on the pavement of I–71, resulting in his death"; (3) that based on the toxicology report from the Montgomery County Coroner, Marcus had a blood-alcohol content ("BAC") of .183 percent subsequent to his death; and (4) that AFLAC had denied coverage based on an exclusion that stated, "We will not pay benefits for an accident or [s]ickness that is caused by or occurs as a result of a covered person's: 1. [p]articipating in any activity or event, including the operation of a vehicle * * * while intoxicated ('intoxicated' means that condition as defined by the law of the jurisdiction in which the accident occurred)." The record reveals that AFLAC had determined that Marcus was intoxicated, as defined by Ohio law, when he died, because his BAC was greater than .10, the presumptive limit of intoxication with respect to operating a motor vehicle as set forth in R.C. 4511.19(A)(2).[1] Under the policy, however, the terms "activity" and "event" were not defined.

{¶ 3} In her single assignment of error, McKeehan now contends that the trial court erred when it determined that Marcus was not covered under the policy at the time of his death. Specifically, McKeehan argues that the phrase "participating in any activity or event" and the term "intoxicated," as contained in the exclusion used to deny coverage, were ambiguous and that their meanings had to be construed in favor of coverage.

{¶ 4} The words and phrases contained in an insurance policy must be given their plain and ordinary meaning unless there is something in the contract that would indicate a contrary intention.[2] But when provisions of a contract are reasonably susceptible of more than one interpretation, they must be construed strictly against the insurer and liberally in favor of the insured.[3] Further, "[t]he insurer, being the one who selects the language in the contract, must be specific

---

1. R.C. 4511.19(A)(2) was amended on June 30, 2003, by H.B. No. 87, in which the legislature lowered the presumptive limit of intoxication, with respect to operating a motor vehicle, to eight-hundredths of one gram by weight of alcohol per 210 liters of blood.

2. *Olmstead v. Lumbermens Mut. Ins. Co.* (1970), 22 Ohio St.2d 212, 216, 51 O.O.2d 285, 259 N.E.2d 123.

3. *King v. Nationwide Ins. Co.* (1988), 35 Ohio St.3d 208, 519 N.E.2d 1380, syllabus.

in its use; an exclusion from liability must be clear and exact in order to be given effect."[4] Accordingly, we interpret an exclusion in an insurance policy as only applying to that which is clearly intended to be excluded.[5]

{¶ 5} In support of her assignment, McKeehan first contends that AFLAC did not prove that Marcus was "participating in any activity or event." We agree. The trial court, based on the stipulated facts, determined that the "activity" in this case had been riding in the bed of a pickup truck.[6] The trial court made that determination after defining "activity" as "the state of being active" or "an occupation or pursuit in which a person is active." But based on those definitions, we cannot see how merely being a passenger in a motor vehicle is a "state of being active."

{¶ 6} We hold that the exclusion at issue was ambiguous because it was unclear what AFLAC intended to exclude by the term "activity." For example, there was no definition of "activity" or "event" in the policy. Further, Carol Elmore, a claims adjustor for AFLAC, testified that AFLAC had no set guidelines to assist adjustors in determining whether something was an "activity" or "event" for purposes of coverage. Elmore testified that each adjustor made that decision on a case-by-case basis.

{¶ 7} Because the term "activity" was ambiguous, it had to be liberally construed in favor of the insured and, thus, meant something more than passively riding in the back of a pickup truck or in a car. Therefore, because Marcus was not participating in an activity, AFLAC failed to meet its burden of proving that the exclusion at issue precluded coverage here.[7]

{¶ 8} Although AFLAC could not use the exclusion at issue here to preclude coverage, we briefly address McKeehan's argument that R.C. 4511.19, Ohio's drunk-driving statute, does not define the term "intoxicated" and, therefore, could not be used by AFLAC to determine whether an insured was intoxicated for purposes of excluding coverage. Elmore had testified that

---

4. *Lane v. Grange Mut. Cos.* (1989), 45 Ohio St.3d 63, 65, 543 N.E.2d 488, citing *Am. Fin. Corp. v. Fireman's Fund Ins. Co.* (1968), 15 Ohio St.2d 171, 44 O.O.2d 147, 239 N.E.2d 33.

5. *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.* (1992), 64 Ohio St.3d 657, 665, 597 N.E.2d 1096.

6. AFLAC argues in its appellate brief that the "activity" Marcus was involved in was jumping out of a truck. Unfortunately, AFLAC cannot now argue that the jumping from the truck was the "activity," because it stipulated at trial that Marcus was riding in the back of the pickup truck and somehow "came out" of the truck.

7. See *Continental Ins. Co. v. Louis Marx & Co.* (1980), 64 Ohio St.2d 399, 18 O.O.3d 539, 415 N.E.2d 315, syllabus (burden is on insurer to prove that exclusion is applicable).

AFLAC had denied McKeehan's claim because Marcus had a BAC of .183, a concentration above the legal limit for persons operating motor vehicles in Ohio.

{¶ 9} We agree with McKeehan that R.C. 4511.19(A)(2), which sets forth the blood-alcohol-concentration level at which a person can no longer operate a motor vehicle, could not have been the basis for denying coverage here. AFLAC's policy stated that "intoxication" meant "that condition as defined by the law of the jurisdiction where the accident occurred." Under common law in Ohio, the term "intoxication" is a term of art and is often used interchangeably with the phrase "under the influence." [8] But Ohio law is also clear that operating a motor vehicle with a certain concentration of alcohol in one's blood does not mean that one is "intoxicated" or "under the influence" of alcohol in **other** settings.[9]

{¶ 10} Intoxication is defined as being "excited or exhilarated beyond self-control by alcoholic drinks," and "intoxicate" is defined as "to excite or stupefy by alcoholic drinks or a narcotic specially to the point where physical and mental control is markedly diminished."[10] Although AFLAC presented evidence that Marcus had a BAC of .183, a concentration above the legal limit for persons operating motor vehicles in Ohio, it did not present any evidence to demonstrate that Marcus's physical and mental control was appreciably diminished by alcohol.

{¶ 11} AFLAC cites *Phelps v. Positive Action Tool Co.*[11] for the proposition that evidence of a BAC level over the limit set forth in R.C. 4511.19(A)(2) can be used to deny coverage to insureds on the basis that they are intoxicated. In *Phelps*, the Ohio Supreme Court held that an employee who had a BAC of .21 when he crashed his car while driving to work was not entitled to workers' compensation benefits because he was "grossly intoxicated."[12] But the *Phelps* court did not rely solely on the employee's BAC level in determining that the employee was "intoxicated." The court also noted that the employee had been drinking several hours before the accident, that the employee could not remember how the accident had occurred, and that the employee had never hit the

---

8. *Cincinnati v. Kromski* (1995), 102 Ohio App.3d 621, 657 N.E.2d 796.

9. *Hertz Corp. v. GT & MC, Inc.* (Aug. 15, 1991), 10th Dist. No. 91AP–67, 1991 WL 159883; *State v. Wilcox* (1983), 10 Ohio App.3d 11, 13, 10 OBR 17, 460 N.E.2d 323; *State v. Kuhn* (Mar. 25, 1996), 4th Dist. No. 94CA24, 1996 WL 140197 ("The alcohol limits prescribed by R.C. 4511.19[A][2]-[4] are per se offense[s] which prohibit the operation of a motor vehicle above a certain level of concentration in the body. Those limitations do not (1) create a[n] arbitrary legal definition of intoxication, or (2) apply in any other context beyond the operation of a motor vehicle.").

10. See Webster's Third New International Dictionary (1981).

11. (1986), 26 Ohio St.3d 142, 497 N.E.2d 969.

12. Id. at 145, 26 OBR 122, 497 N.E.2d 969.

breaks in an attempt to avoid the accident (the evidence showed that there were no skid marks). Finally, the Supreme Court noted that intoxication alone did not mean that an employee could not recover benefits, but that intoxication that "render[ed] an employee incapable of performing his work" would usually lead to the loss of an entitlement to benefits under the workers' compensation system.[13]

{¶ 12} Here, AFLAC only presented evidence of Marcus's blood-alcohol content. The stipulated facts were silent concerning Marcus's conduct immediately prior to his death.[14] And while we can speculate that a person with a BAC of .183 is most likely "intoxicated," Ohio law requires more than a BAC level to prove that one is intoxicated for purposes **other than** operating a motor vehicle. It must also be shown that the alcohol has impaired one's physical or mental self-control.

{¶ 13} Based on the above circumstances, we hold that AFLAC did not prove that Marcus was intoxicated, as that term is defined under Ohio law, for purposes of excluding coverage under the policy.

{¶ 14} Accordingly, we sustain McKeehan's assignment of error. We reverse the judgment of the trial court and remand this case for further proceedings consistent with this decision and the law.

Judgment reversed<br>and cause remanded.

SUNDERMANN, P.J., and WINKLER, JJ., concur.

---

13. Id.

14. A police report was attached as an exhibit to Elmore's deposition. Within the report were statements by witnesses to the death of Marcus McKeehan. But the trial court could not have relied upon those statements, because they constituted inadmissible hearsay. See Evid.R. 801(C) and 802.