DECISION.
{¶ 1} On April 17, 1999, defendant Robert Whitesell was driving a Mercedes Benz owned by his employer, Fair Enterprises West Auto Sales, Inc. ("FEW"). Whitesell picked up plaintiff-appellee Larry Billow at a bar they frequented. The two then drove to another bar where Whitesell had arranged to meet a woman. Billow testified that he saw Whitesell drink four beers between 4:00 p.m. and midnight. On the way home from the bar, Whitesell lost control of the car, which left the road and struck a telephone pole. Billow was injured in the accident. At the time of the accident, Whitesell's driver's license had been suspended.
 {¶ 2} Billow and his family filed a complaint against Whitesell seeking damages for the injuries Billow sustained in the accident. The complaint also named as a defendant Billow's personal uninsured/underinsured-motorist carrier, defendantappellee/third-party plaintiff State Automobile Mutual Insurance Co. ("State Auto"). State Auto filed a third-party complaint for declaratory judgment against FEW's insurer, third-party defendant-appellant Auto-Owners Mutual Insurance Co. ("Auto-Owners"). Billow amended his complaint to assert his own claims against Auto-Owners.
 {¶ 3} The parties stipulated that Whitesell's negligence was the sole cause of the accident. Cincinnati Equitable Insurance Company paid $12,500 to the Billows, the amount of a financial responsibility bond that it had issued to Whitesell. Auto-Owners, State Auto and the Billows filed motions for summary judgment in order to determine the applicability of the various insurance policies. At a hearing on September 6, 2002, the trial court stated, with the agreement of the parties, that the court was holding a "full bench trial" on the insurance issues and that the court's decision would be made based upon "a preponderance of the evidence." Following the hearing, counsel for both insurance companies stated that they were satisfied that all the evidence had been presented and that the trial court's decision would be by a preponderance of the evidence.
 {¶ 4} The trial court entered an order on November 1, 2002, granting State Auto's motion for summary judgment, granting in part Billow's motion for summary judgment and denying Auto-Owners' motion. The court ruled that the liability portion of the Auto-Owners policy was applicable. The court further held that State Auto's uninsured/underinsured-motorist coverage was excess to the liability coverage provided by Auto-Owners. An "agreed final judgment" was entered on August 7, 2003, disposing of all other issues. Auto-Owners has timely appealed.
 {¶ 5} Auto-Owners' two assignments of error allege that the trial court erred in granting the summary-judgment motions of Billow and State Auto and in denying Auto-Owners' motion for summary judgment on the issue of insurance coverage under the liability portion of the Auto-Owners policy.
 {¶ 6} An insurance policy is a contract between the insurer and the insured. See Nationwide Mut. Ins. Co. v. Marsh (1984), 15 Ohio St.3d 107,472 N.E.2d 1061. The words and phrases contained in an insurance policy must be given their plain and ordinary meaning unless some other meaning is clearly intended from the face or overall contents of the policy. SeeOlmstead v. Lumbermens Mut. Ins. Co. (1970), 22 Ohio St.2d 212,259 N.E.2d 123; McKeehan v. The American Family Life Assurance Co.,156 Ohio App.3d 254, 2004-Ohio-764, 805 N.E.2d 183. A court cannot alter the clear and unambiguous language of an insurance policy in order to reach a result not intended by the parties to the contract. SeeGomolka v. State Automobile Mut. Ins. Co. (1982), 70 Ohio St.2d 166,436 N.E.2d 1347.
 {¶ 7} The insurance policy issued by Auto-Owners to FEW provided that Auto-Owners would "pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law, or assumed under any contract as defined herein, for damages because of * * * bodily injury, sickness or disease including death at any time resulting therefrom * * * neither expected nor intended from the standpoint of the insured and arising out of the hazards defined in Section II of this coverage form." Under the Auto-Owners policy, "`insured' shall mean, whenever used in Coverages A and B and in other parts of this coverage form when applicable to these coverages, not only the named insured but also * * * any person while using an automobile covered by this coverage form and any person or organization legally responsible for the use thereof, provided the actual use of theautomobile is with the permission of the named insured." (Emphasis ours.)
 {¶ 8} A person seeking to recover under a policy of insurance generally has the burden to demonstrate coverage under the policy. SeeWestfield Ins. Co. v. Galatis, 100 Ohio St.3d 216, 2003-Ohio-5849,797 N.E.2d 1256; Inland Rivers Service Corp. v. Hartford Fire Ins. Co.
(1981), 66 Ohio St.2d 32, 418 N.E.2d 1381; Standish v. The Ohio CasualtyIns. Co., 1st Dist. No. C-030041, 2003-Ohio-4309; The Home Ins. Co. ofIllinois v. OM Group, Inc., 1st Dist. No. C-020643, 2003-Ohio-3666;Cincinnati Ins. Co. v. Kramer (1993), 91 Ohio App.3d 528,632 N.E.2d 1333. "Under the provisions of an automobile liability insurance policy in which the coverage is extended to include a third person if the actual use of the automobile is with the permission of the named insured, such permission relates to the use to which the automobile is being put by such third person at the time of the accident." Gulla v.Reynolds (1949), 151 Ohio St. 147, 85 N.E.2d 116, paragraph one of the syllabus.
 {¶ 9} In order to recover under the liability portion of the Auto-Owners policy, Billow had the burden to show that Whitesell was an insured under the policy. The trial court erroneously put the burden on Auto-Owners to affirmatively show that Whitesell did not have permission to drive FEW's automobile. Billow had the burden to establish that Whitesell had FEW's permission to drive the automobile at the time the accident occurred. The parties stipulated that, at the time the accident occurred, Whitesell was not acting in the course and scope of his employment with FEW.
 {¶ 10} Billow testified that on various occasions he had seen Whitesell drive several different vehicles that Billow "understood" had belonged to FEW. According to Billow's testimony, on those occasions Whitesell was engaged in personal business. Billow stated that Whitesell had shown him a business card that identified Whitesell as the "manager" of FEW's car lot. Billow stated that it was his understanding that Whitesell "had permission to borrow cars or whatever the arrangement was."
 {¶ 11} Auto-Owners presented evidence that at the time of the accident Whitesell's driver's license had been suspended. James Campbell, an owner/investor of FEW who held the dealership license, testified that FEW had purchased ten to fifteen new vehicles at a time for the lot. Drivers were then needed to transport the cars from the selling dealership to FEW's lot. Campbell stated that Whitesell was never involved in transporting the automobiles from a dealership to FEW's lot.
 {¶ 12} Auto-Owners also presented evidence that none of Whitesell's co-workers saw him drive a car off of FEW's lot after his license had been suspended. Kim Shanks, an employee of FEW, testified that she never saw Whitesell drive any of FEW's vehicles and that to her knowledge the only car owned by FEW that Whitesell had ever driven was "the one he wrecked." Shanks testified that Whitesell did not transport any of the vehicles that FEW purchased for the lot even though FEW needed as many drivers as possible to move the cars. Shanks also testified that to her knowledge it was not typical for FEW's employees to drive vehicles off of the lot for personal business.[1]
 {¶ 13} There is no evidence that Whitesell had permission to drive the Mercedes Benz on the night of the accident. There is certainly no evidence that Whitesell had actual permission to take one of FEW's cars to go barhopping with Billow. Billow's "understanding" that Whitesell drove vehicles belonging to FEW for personal business was simply not enough to establish that Whitesell had permission to drive FEW's vehicle on the night of the accident. Billow failed to carry his burden to show that Whitesell had actual permission to drive FEW's automobile.
 {¶ 14} The evidence does not support the trial court's determination that Whitesell was an "insured" under the liability portion of the Auto-Owners policy. We hold that the liability portion of the Auto-Owners policy did not provide coverage for Billow's injuries. The first and second assignments of error are sustained.
 {¶ 15}
State Auto has raised an assignment of error pursuant to R.C. 2505.22 to prevent reversal of the trial court's judgment. State Auto alleges that Billow's injuries were covered under the underinsured-motorist provisions of the Auto-Owners policy, and that Auto-Owners' underinsured-motorist coverage had to be exhausted before State Auto's underinsured-motorist coverage applied.
 {¶ 16} The pertinent underinsured-motorist provisions of the Auto-Owners policy define an insured as "any person while occupying an insured automobile." "Insured automobile" is defined as "a motor vehicle to which the Bodily Injury Liability Coverage of the policy applies, provided such motor vehicle is * * * a motor vehicle which is owned by the insured named in the Declarations of the policy, and, if the named insured is an individual, a motor vehicle owned jointly by the named insured and spouse." The policy states that "the term `insured automobile' shall not include * * * a motor vehicle unless being used by or with the permission of the named insured or such spouse." The policy provides that "the term underinsured automobile shall not include an automobile to which the bodily injury and property damage liability coverage provided by the policy applies." The policy also provides that "the term underinsured automobile shall not include an automobile owned by, furnished to, or available for the regular use of the named insured and if an individual, the named insured's spouse or a relative of either."
 {¶ 17} In interpreting an identical underinsured-motorist provision of an Auto-Owners policy, the Ninth Appellate District stated, "[P]ursuant to the above definition of `insured automobile' for there to be coverage a vehicle owned by the `named insured' must be used with the permission of the named insured." See Richardson v. Auto-Owners Mut. Ins. Co., 9th Dist. No. 21697, 2004-Ohio-1878. Under the unambiguous terms of the instant Auto-Owners policy, in order for the underinsured-motorist coverage to apply, the automobile must have been owned by FEW and used with the permission of FEW. See id.; Morrison v. Ratteray (Aug. 29, 1985), 10th Dist. No. 85AP-275.
 {¶ 18} Billow failed to establish that Whitesell had permission to drive FEW's vehicle on the night of the accident. Under the unambiguous terms of the Auto-Owners underinsured-motorist endorsement, Billow was not occupying an insured automobile at the time of the accident, and, therefore, he did not qualify as an "insured." In addition, Auto-Owners' underinsured-motorist coverage was inapplicable because the automobile was owned by FEW, the named insured, and, therefore, it did not qualify as an underinsured automobile under the policy. State Auto's assignment of error is overruled.
 {¶ 19} The judgment of the trial court is reversed and the cause is remanded for further proceedings consistent with law and this decision.
Judgment reversed and cause remanded.
Hildebrandt and Painter, JJ., concur.
[1] Both Campbell and Shanks testified that FEW's owner/operator, Eric Charles, had stated that Whitesell was not permitted to drive any of FEW's vehicles because his driver's license had been suspended. Prior to trial, Charles died. The trial court ruled that the testimony of Campbell and Shanks about Charles's statements constituted hearsay and excluded the testimony.