File Name: 11a0871n.06

**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

**No. 10-3618**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

ILLINOIS NATIONAL INSURANCE COMPANY, )
                                      )
    Plaintiff-Appellant,              )
                                      )
    v.                                )
                                      )
OHIO SECURITY INSURANCE COMPANY,      )
                                      )
    Defendant-Appellee.               )
                                      )

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

Before:  CLAY, GIBBONS, and WHITE, Circuit Judges.

**HELENE N. WHITE, Circuit Judge.**  Plaintiff Illinois National Insurance Company ("Illinois National") appeals the district court's determination on summary judgment that the policy issued by defendant Ohio Security Insurance Company ("Ohio Security") to its insured Terry Moon ("Moon") does not provide coverage for Moon's trucking accident.  We **AFFIRM**.

**I.**

**A.**

Beginning February 12, 2003, Terry Moon has leased his 1996 Peterbilt tractor and 2001 Retnol trailer to O&I Transport ("O&I"), a motor carrier.  At the time of the accident, Moon's tractor displayed O&I's identification placard in its window.  O&I maintained state-mandated liability insurance with Illinois National.  The Illinois National policy states, in pertinent part:

SECTION II - LIABILITY COVERAGE

A. Coverage

   We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".
   ....

   [W]e have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Liability Insurance has been exhausted by payment of judgments or settlements.

   1. Who Is An Insured

   The following are "insureds":
   ....
   c. The owner or anyone else from whom you hire or borrow a covered "auto" that is a "trailer" while the "trailer" is connected to another covered "auto" that is a power unit, or, if not connected:

        (1)    Is being used exclusively in your business as a "trucker", and
        (2)    Is being used pursuant to operating rights granted to you by a public authority.

   d. The owner or anyone else from whom you hire or borrow a covered "auto" that is not a "trailer" while the covered "auto":

        (1)    Is being used exclusively in your business as a "trucker", and
        (2)    Is being used pursuant to operating rights granted to you by a public authority.
....

SECTION V- TRUCKERS CONDITIONS
....

B. General Conditions

....

5. Other Insurance- Primary And Excess Insurance Provisions

> a. This Coverage Form's Liability Coverage is primary for any covered "auto" while hired or borrowed by you and used exclusively in your business as a "trucker" and pursuant to operating rights granted to you by a public authority. . . .
>
> ....
>
> c. Except as provided . . . above, this Coverage Form provides primary insurance for any covered "auto" you own and excess insurance for any covered "auto" you don't own.

At the time of the accident, Moon maintained a separate "non-trucking use" policy with Ohio Security providing coverage at times when Moon's tractor was not being used in the business of any trucking company. This policy contains an endorsement stating in pertinent part:

> A:   The following exclusions are added:
>
> This insurance does not apply to:
>
> 2. A covered auto . . . when being maintained or used (i) at the direction of, under the control of, under orders from, after being dispatched by, or in the business of any trucking company or lessee of such auto . . . .
>
> 3. A covered auto . . . when on a return trip to the place it is customarily garaged, or to a terminal or office of a party to whom it is rented, leased, or loaned, or to the home of the Named Insured, after having delivered goods or merchandise under direction, control, or dispatch to anyone other than the Named Insured under this policy.

It is not disputed that Illinois National's policy provides coverage for Moon's accident. The sole issue is whether Ohio Security's policy provides coverage for Moon's accident, thereby rendering Illinois National's coverage excess only.

**B.**

Throughout the year preceding the accident, Moon customarily parked his tractor and trailer at his home in New Riegel, Ohio. At times, however, he parked his tractor and trailer at the Shell gas station close to his home. O&I paid Moon a flat rate per assignment and Moon usually did not drive for O&I on the weekends. According to Moon's logbook, on June 15, 2007, O&I dispatched Moon to pick up a load in Marion, Ohio. Moon picked up the load and brought it home. From that point until June 17, 2007, Moon's logbook states he was off duty. On June 17, 2007, Moon drove the Marion load to Earth City, Missouri, where he delivered the load on June 18, 2007. Moon proceeded to make various deliveries throughout the week without returning home. After each delivery Moon spoke to a dispatcher at O&I.

On June 22, 2007, Moon made a delivery in West Virginia then proceeded to pick up another load at Dofasco, Inc. in Marion, Ohio, for delivery in Florida. Moon picked up the load from Dofasco and intended to take it home for the weekend before making the delivery in Florida. However, after Moon loaded his trailer, Dofasco employees discussed whether Moon should leave the loaded trailer at Dofasco so the load would not get rusty by sitting in front of Moon's house overnight. Moon informed the O&I dispatcher about Dofasco's concerns and was told to leave the loaded trailer at Dofasco and pick it up Sunday night. Moon then detached his loaded trailer and headed to Upper Sandusky, Ohio to look for a truck wash. After checking a couple of truck stops, Moon was unable to locate the truck wash and began to head home.

From the time Moon left Dofasco until the accident, Moon took the same route he would have taken had he traveled directly home without detouring to look for the truck wash—Highway

- 4 -

23 North to Highway 53 North—except for the brief departure and return to his normal route; Moon's search for the truck wash only took him about a half-mile off Highway 23 North. After his unsuccessful search, Moon returned to Highway 23 North and then exited onto Highway 53 North— his normal route home. At some point along Highway 53 North, Moon collided with a motorcycle. Michael and Janet Reiter, the motorcycle driver and passenger, respectively, were killed. The Reiters' estate sued Moon and O&I.

## C.

After the accident, counsel for both Moon and Illinois National wrote Ohio Security demanding Ohio Security pay the limits of Moon's non-trucking-use policy to resolve the Reiter's action. Ohio Security refused on the ground that Moon's policy did not provide coverage because the accident occurred while Moon was returning to his home terminal and acting in the business of O&I. Ultimately, Illinois National defended Moon and O&I in the Reiter's suit and paid a million-dollar settlement to the Reiters' estate. The instant lawsuit followed.

## II.

## A.

The parties filed cross-motions for summary judgment. In its order granting Ohio Security's motion for summary judgment and denying Illinois National's motion for summary judgment, the district court held that Moon was acting in the business of O&I at the time of the accident because "Moon was traveling on his customary homeward route at the time of the accident, regardless of any earlier detour, and he had informed his dispatcher of his plans to bobtail home prior to the accident." Illinois National argues that because Ohio Security failed to demonstrate Moon was acting "in the

business" of O&I after Moon "abandoned" the load from Dofasco to go home for the weekend and detoured to look for a truck wash, the district court's decision should be reversed. Ohio Security contends the district court's decision should be upheld because Moon's conduct at the time of the accident fell within several of its policy exclusions.

We review a district court's grant or denial of summary judgment *de novo*. *Williams v. Mehra*, 186 F.3d 685, 689 (6th Cir. 1999). The moving party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] party seeking summary judgment always bears the initial responsibility of informing the [court] of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Neither party disputes the district court's determination that Ohio law applies. Under Ohio law, "[t]he words and phrases contained in an insurance policy must be given their plain and ordinary meaning unless there is something in the contract that would indicate a contrary intention." *McKeehan v. Am. Family Life Assurance Co. of Columbus*, 805 N.E.2d 183, 184 (Ohio Ct. App. 2004). When a contractual provision can be reasonably interpreted in multiple ways, it "must be construed strictly against the insurer and liberally in favor of the insured." *Id.* However, "to establish a relevant ambiguity, a litigant must put forward a 'plausible' competing interpretation of the phrase . . . not just any interpretation." *Auto-Owners Ins. Co. v. Redlands Ins. Co.*, 549 F.3d 1043, 1047 (6th Cir. 2008). Exclusions should be construed "as only applying to that which is

clearly intended to be excluded," *McKeehan*, 805 N.E.2d at 185, and the insurer has the burden of establishing the affirmative defense that a policy exclusion applies, *Cont'l Ins. Co. v. Louis Marx & Co., Inc.*, 415 N.E.2d 315, 317 (Ohio 1980).

Although Ohio Security argued below that the "in the business" and "being dispatched" exclusions of subpart A(2), and the "return trip" exclusion of subpart A(3), applied to Moon's conduct at the time of the accident, the district court's opinion focused solely on the "in the business" exclusion. Because we conclude the district court correctly determined that the "in the business" exclusion precludes coverage for the accident, we will not address whether the remaining exclusions apply.

**B.**

Ohio courts follow the rule announced by the Illinois Supreme Court in *St. Paul Fire & Marine Ins. Co. v. Frankart* that an owner-driver remains in the business of the carrier-lessee until the owner-driver "returns to the point where the haul originated . . . to the terminal from which the haul was assigned . . . , or to the owner-driver's home terminal from which he customarily obtained his next assignment." 370 N.E.2d 1058, 1062 (Ill. 1977); *see also Cincinnati Ins. Co. v. Haack*, 708 N.E.2d 214, 231 (Ohio Ct. App. 1997).

Moon began his outbound journey for O&I on June 17, 2007 and did not commence his return home until June 22, 2007. The accident occurred while Moon was en route home. Despite the fact that Moon was returning home after completing multiple deliveries for O&I, Illinois National contends the *Frankart* rule should not apply because Moon was not returning home from a delivery at the time of the accident. According to Illinois National, Moon's pick-up at Dofasco was an

intervening event that terminated his return trip from the West Virginia delivery. Illinois National argues that because Moon left his loaded trailer at Dofasco without completing the delivery so that he could go home for the weekend, Moon was on a personal trip, rather than a return trip, at the time of the accident. This argument lacks merit.

O&I dispatched Moon on various assignments after he left his home terminal. Under *Frankart*, Moon remained in the business of O&I until he returned home. The fact that Moon returned home without a trailer attached did not take him out of O&I's business. *See Haack*, 708 N.E.2d at 231 (driver returning to home terminal with an empty trailer was still in the business of the lessee). Similarly, Moon's decision, with O&I's approval, to return home prior to completing his last delivery did not take him out of O&I's business. Had Moon merely returned home without making the last pick-up at Dofasco, there would be no dispute that Moon was on a return trip home and thus in the business of O&I. Therefore, it would be illogical to conclude that Moon's stop at Dofasco to conduct more business for O&I took him out of O&I's business.

Further, Moon's brief detour to look for a truck wash does not affect this analysis; the accident occurred after the detour was complete and Moon had returned to his customary route home. However, even if the detour were a relevant consideration, this Court has previously found that minor personal detours such as the one here do not take a driver out of the carrier's business. *See Auto-Owners Ins.*, 549 F.3d at 1046 (driver remained in carrier's business where he left loaded trailer at delivery site then drove to find a motel); s*ee also Frankart*, 370 N.E.2d 1062 (driver's detour to buy cheap fuel and find additional work from a different carrier did not take him out of dispatching carrier's business).

Lastly, we reject Illinois National's contention that the district court should have reached a contrary result based on *Carolina Cas. Ins. Co. v. Panther II Transp., Inc.*, 643 F. Supp. 2d 953 (N.D. Ohio 2009). The driver in *Panther II Transp.* was not employed by the carrier at the time of his accident and was neither driving to conduct business for the carrier nor returning from such business. Accordingly, *Panther II Transp.* is inapposite.

**III.**

In sum, because Moon was acting in the business of O&I at the time of the accident, his policy with Ohio Security did not provide coverage. Illinois National is therefore not entitled to contribution from Ohio Security for the expenditures it paid as a result of Moon's accident.[1] Accordingly, we **AFFIRM** the district court's order denying Illinois National's motion for summary judgment and granting Ohio Security's motion for summary judgment.

---

[1] For the same reason, Illinois National is also not entitled to contribution under Ohio Revised Code § 2307.34. Pursuant to that statutory provision, Illinois National may obtain contribution only if the accident occurred while Moon was engaged in "non-trucking activity." Ohio R.C. § 2307.34(B)(5). Because we uphold the district court's determination that Moon was acting in the business of O&I at the time of the accident, by definition Moon could not have been engaged in "non-trucking activity." *See Auto-Owners Ins.*, 549 F.3d at 1047.